**Case No. 16-5722**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FOLUSO FAKOREDE,**
        **Plaintiff/Appellant,**

**v.**

**MID-SOUTH HEART CENTER, P.C.,**
        **Defendant/Appellee**

**On appeal from the U.S. District Court of Tennessee, Western District, at Jackson, Tennessee (No. 1:15-cv-01285)**

---

**REPLY BRIEF OF APPELLANT, FOLUSO FAKOREDE**

---

Donald Capparella, BPR# 011239
Elizabeth Sitgreaves, BPR#27539
Dodson Parker Behm & Capparella, PC
1310 6th Ave North
Nashville, TN 37208
(615) 254-2291
(615) 726-2241 (fax)
Capparella@dodsonparker.com
esitgreaves@dodsonparker.com

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...........................................................................ii

TABLE OF AUTHORITIES ...................................................................iii

ARGUMENT ..........................................................................................1

    **I.**    **MID-SOUTH'S BRIEF STATES AN INCORRECT STANDARD OF REVIEW AND CONTAINS INACCURACIES ABOUT THE ALLEGATIONS OF DR. FAKOREDE'S COMPLAINT** ............................................1

    **II.**    **DR. FAKOREDE'S COMPLAINT ALLEGED THAT HE ENGAGED IN THE PROTECTED ACTIVITY OF ENGAGING IN EFFORTS TO STOP VIOLATIONS OF THE FALSE CLAIMS ACT, THE STARK LAW, AND THE ANTI-KICKBACK STATUTE** ............................................6

    **III.**    **MID-SOUTH DID NOT STATE FEDERAL RULE OF CIVIL PROCEDURE 9(B) AS A GROUND IN ITS MOTION TO DISMISS** ............................................13

    **IV.**    **DR. FAKOREDE'S COMPLAINT SET FORTH SUFFICIENT ALLEGATIONS TO PLEAD A RETALIATORY DISCHARGE CLAIM UNDER THE FCA** .......15

CONCLUSION ........................................................................................17

CERTIFICATE OF COMPLIANCE........................................................18

CERTIFICATE OF SERVICE ................................................................18

## TABLE OF AUTHORITIES

**Cases:**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007)....................................... 1-2, 6

*Bonewitz v. NewQuest*, LLC, No. 3:14-CV-00096, 2015 WL 1825375, at *6 (M.D. Apr. 22, 2015) .........................................................................................7

*Escobar v. United Health Services*, 579 U.S. _____ (2016) ............................... 9-10

*Farmer v. Eagle Sys. & Serv., Inc.*, No. 15-1124, 2016 WL 3564386, at *2 (4th Cir. July 1, 2016) ..............................................................................................10

*Jones-McNamara*, 630 Fed. Appx. 394, 399 (6th Cir. 2015).................... 8-9, 12, 15

*Merritt v. Mountain Laurel Chalets, Inc.*, 96 F.Supp.3d 801, 811 (E.D. Tenn. 2015) ............................................................................................. 1-2, 6

*Miller v. Abbott Labs.,* No. 15-5762, 2016 WL 2799688, (6th Cir. May 12, 2016) ................................................................................. 8-9, 12

*Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 913 (E.D. Mich. 2012) ..................................................................................................15

*Tibor v. Michigan Orthopaedic Institute*, 72 F. Supp. 3d 750, 754 (E.D. Mich. 2014) ............................................................................................. 10-11

*U.S. ex rel. Schaengold v. Memorial Health*, No. 4:11-cv-58, 2014 WL 7272598, at *17 (S.D. Ga. Dec. 18, 2014).............................................................................14

*Verble v. Morgan Stanley Smith Barney, LLC,* 148 F. Supp. 3d 644, 657 (E.D. Tenn. 2015) ..................................................................................................12

**Statutes and Rules:**

31 U.S.C. § 3730(h) ....................................................................................... 10-11, 13

Federal Rule of Civil Procedure 9(b)......................................................... 13-14, 17

Federal Rule of Civil Procedure 12(b)(6) ......................................................1, 10, 14

## ARGUMENT

## I.   MID-SOUTH'S BRIEF STATES AN INCORRECT STANDARD OF REVIEW AND CONTAINS INACCURACIES ABOUT THE ALLEGATIONS OF DR. FAKOREDE'S COMPLAINT.

Throughout its brief, Mid-South Heart Center, P.C. ("Mid-South") repeatedly misuses the term "plausible" in its attempt to muddle the correct standard of review in a motion to dismiss. In determining a motion to dismiss, this Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). "A motion to dismiss under Rule 12(b)(6) must be denied where the plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Merritt v. Mountain Laurel Chalets, Inc.*, 96 F.Supp.3d 801, 811 (E.D. Tenn. 2015).

Mid-South repeatedly challenges the allegations in the Complaint as "not plausible," followed by conclusory and self-serving statements rejecting those allegations.  As a result, Mid-South ignores that Dr. Fakorede is entitled to all reasonable inferences from those factual allegations, and it is upon these inferences drawn in his favor that the Court is to review whether Dr. Fakorede's Complaint states a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 546;

*Merritt*, 96 F.Supp. 3d at 811.  Mid-South skips right past the inferences and goes straight to its self-serving conclusion that the allegations in the Complaint are not plausible.

Mid-South also makes the unsupported assertion that Dr. Fakorede never expressed concerns regarding the expenses to anyone at Mid-South until after his termination. (Appellee's Brief, Doc. 17, PageID#12). Mid-South compounds this incorrect statement by stating that the Complaint does not allege that Mid-South was privy to any communications that occurred between Jackson-Madison County General Hospital District ("the District") or that Dr. Fakorede made any attempt to discuss this matter with Mid-South. (Appellee's Brief, Doc. 17, PageID#13).  The Complaint contains just such allegations.

For example, Dr. Fakorede alleged in his Complaint that on January 10, 2015, he sent an email to Carla Reeves, the District's Financial Director; Charlotte Beard, Mid-South's Practice Manager; and Mickey Hannon, Mid-South's accountant. (R.E. 1, PageID#12-13, Para. 63-64, 67). He expressed concerns about Mid-South's financial report submitted to the District, and specifically requested that the District collaborate with Mid-South to revisit the depreciation expense of $207,230.94, which was wrongfully attributed to him for an Out-Patient Based Lab that he did not use.  (R.E. 1, PageID#12-13, Para. 63-64, 67).

The Complaint also set forth allegations demonstrating that Mid-South was fully aware that Dr. Fakorede raised concerns regarding the misclassification of expenses to him, because he alleged that on January 12, 2015, Mickey Hannon, Mid-South's outside accountant responded to defend that depreciation expense. Mr. Hannon's defense was unsuccessful, and the expense was later disallowed. (R.E. 1, PageID#13, para. 68; PageID#14-15, para. 74).

Additionally, the Complaint alleged that on January 9, 2015, Carla Reeves at the District, sent an email to Charlotte Beard (Mid-South) and Mickey Hannon (Mid-South's outside accountant) that Dr. Fakorede had raised some questions about the financial reports submitted by Mid-South. (R.E. 1, PageID#12, para. 66). The Complaint further alleged that the District's Vice-President Deann Montchal informed Dr. Fakorede that she had been "in conversation with everyone." (R.E. 1, PageID#15, para. 76).  Given its context, Dr. Fakorede is entitled to the reasonable inference that the reference to "everyone" included persons at Mid-South, since it was Mid-South's erroneous financial reports which were being discussed. Notably, these allegations directly contradict Mid-South's inaccurate statements in its brief.

Mid-South continues its self-serving interpretation of the allegations in the Complaint, on PageID#11 of its Brief, where Mid-South claims without citation, that it "was in Dr. Fakorede's financial interest to minimize the expenses that

[Mid-South] attributed to him in order to reduce any personal liability he might have to repay these sums." (Appellee's Brief, Doc. 17, PageID#11). Such an unsupported interpretation of any allegations in the Complaint has no merit in a review of a motion to dismiss, which requires all factual allegations to be taken as true and all reasonable inferences therefrom to be in favor of Dr. Fakorede.

Mid-South continues its attempts to misconstrue the allegations in the Complaint by arguing that Dr. Fakorede did not become concerned about Mid-South's financial reports until after he sent the January 9th and January 10th emails. (Appellee's Brief, Doc. 17, PageID#33). In making this argument, Mid-South cites not to the allegations in the Complaint, but to its own reply brief in the trial court in an attempt to misconstrue the allegations and allege concessions that do not exist. (Id.). Dr. Fakorede's Complaint states that his concern regarding Mid-South's actions began as early as December. In paragraph 56, Dr. Fakorede alleged that after he reviewed the partial reports from Mid-South for Quarters 1 & 2, he became "very concerned by the Clinic's numbers." (Complaint, R.E. 1, PageID#11, para. 56).

The Complaint further alleged that Dr. Fakorede was "troubled" by the fact that the Clinic had attributed to him more than $127,000 in the Outpatient-Based Lab depreciation expense. (Id., para. 57).  The Complaint also alleged that Dr. Fakorede was "concerned by the significant expenses being attributed to him" for a

number of other items. (Id., para. 58). The timeline in the Complaint demonstrates that these allegations were made at the end of December 2014, and show Dr. Fakorede's concern regarding Mid-South's improper attribution of expenses to him well before the January 9 and 10 emails were sent. (Complaint, R.E. 1, PageID#11, para. 56-58).

Perhaps the most inaccurate statement of all in Mid-South's Brief is that Dr. Fakorede "chose termination." (Appellee's Brief, Doc. 17, PageID#13). Dr. Fakorede did not choose termination. Following his efforts to raise concerns regarding the possible violations of the FCA, AKS, and Stark Law, Dr. Fakorede alleged that he was called into the office of Mid-South's CEO Dr. Cunningham, who made the general statements that Mid-South was not happy and Dr. Fakorede was not happy, and delivered an ultimatum to Dr. Fakorede---either sign a letter of resignation or be terminated. (Complaint, R.E. 1, PageID#16, para. 84). Dr. Fakorede alleged that he responded by informing Dr. Cunningham that he was not willing to sign a resignation letter while an audit resulting from his raised concerns regarding the wrongfully attributed expenses was pending and without ever having received the corrected financial report. (Id., para. 85). Dr. Cunningham's response was to reply immediately in a text message terminating Dr. Fakorede. (Id., para. 86).

To mischaracterize these allegations by saying Dr. Fakorede chose termination is inappropriate. The only reasonable inference from these allegations is that Dr. Fakorede was given two negative options due to his efforts to reverse the expenses wrongfully attributed to him, which he alleged were efforts to stop violations of the FCA, AKS, and Stark Law. Those allegations must be taken as true at the motion to dismiss stage. *Twombly*, 550 U.S. at 546; *Merritt*, 96 F.Supp. 3d at 811.

Mid-South takes the mischaracterization even further by then arguing that Dr. Fakorede breached the Recruiting Agreement by moving to Mississippi, and therefore, he would have been personally liable for Mid-South's wrongful attribution of expenses to him. (Appellee's Brief, Doc. 17, PageID# 14). This self-serving and circular argument completely ignores the fact that any claim of breach of the Recruiting Agreement by Dr. Fakorede in moving to Mississippi was a direct result of the wrongful termination of him by Mid-South, which forced him to find other employment.

## II.   DR. FAKOREDE'S COMPLAINT ALLEGED THAT HE ENGAGED IN THE PROTECTED ACTIVITY OF ENGAGING IN EFFORTS TO STOP VIOLATIONS OF THE FALSE CLAIMS ACT, THE STARK LAW, AND THE ANTI-KICKBACK STATUTE.

Mid-South makes the conclusory and overly broad statement that the Complaint does not link Dr. Fakorede's purported regulatory concerns of violations of the Stark Law and Anti-KickBack Statute to Mid-South committing

6

fraud against the Government. (Appellee's Brief, Doc. 17, PageID#16). This is simply not an accurate statement regarding the allegations in Dr. Fakorede's Complaint. Dr. Fakorede's Complaint sets forth allegations related to kick-backs or violations of the Stark Law as a form of fraud under the FCA, stating "any claims submitted to Medicare for items or services tainted by unlawful kickbacks constitute false and fraudulent claims under the FCA." (Complaint, R.E. 1, PageID#6, para. 28).

In addition, Dr. Fakorede's Complaint stated that: "Any claims submitted for payment to Medicare for items or services tainted by unlawful self-referral constitute false and fraudulent claims under the FCA." (Complaint, R.E. 1, PageID#6, para. 30). These allegations are sufficient to set forth a claim that Dr. Fakorede engaged in protected activity, which had "some nexus to the FCA." *Bonewitz v. NewQuest*, LLC, No. 3:14-CV-00096, 2015 WL 1825375, at *6 (M.D. Apr. 22, 2015). As the district court noted in *Bonewitz*: "In common parlance,. . . , an employee who complains about internal wrongdoing that could reasonably be a violation of the FCA and could lead to a viable FCA action may have engaged in protected activity." *Id*.

Presumably, Mid-South previously felt that these allegations in the Complaint were sufficient, as it now raises for the first time on appeal the argument that Dr. Fakorede's allegations of "reasonable efforts" failed to

sufficiently demonstrate a nexus between Dr. Fakorede's efforts to raise concerns and reverse the wrongfully attributed expenses and a possible FCA claim. (Appellee's Brief, Doc. 17, PageID#16-17).[1] Importantly, neither Mid-South's Motion to Dismiss nor its Memorandum of Law in Support of the Motion to Dismiss raised this issue, and, in fact, Mid-South's Motion and Memorandum of Law do not even contain the word "nexus" anywhere within the pages of argument challenging Dr. Fakorede's Complaint on the basis of reasonable efforts. (*See* Motion to Dismiss, R.E. 16, PageID#46-47; Memorandum In Support, R.E. 17, PageID#48-68).

Mid-South's brief does an excellent job of improperly conflating the law required for establishing liability for a False Claims Act violation, and the law for a retaliation claim by a plaintiff engaged in "protected activity." As this Court has held, "[t]o constitute protected activity, 'an employee need not complete an investigation into potential fraud or uncover **an actual** FCA violation' because the FCA's anti-retaliation provision protects employees while they are merely collecting information about potential fraud." *Miller v. Abbott Labs.*, No. 15-5762,

---

[1] Mid-South addressed whether Dr. Fakorede alleged a sufficient nexus solely in its argument that Dr. Fakorede did not allege he intended to further an FCA. (Memorandum In Support, R.E. 17, PageID#59). Mid-South did not raise the issue of whether Dr. Fakorede alleged a sufficient nexus in its Argument on whether Dr. Fakorede sufficiently plead efforts to stop an FCA violation, in fact the word "nexus" appears nowhere in that argument section. (Id.).

2016 WL 2799688, at *5 (6th Cir. May 12, 2016) (citing *Jones–McNamara*, 630 Fed. Appx. 394, 399 (6th Cir. 2015)) (other citations omitted) (emphasis added).

As discussed at length in Dr. Fakorede's initial brief, the protected activity engaged in by Dr. Fakorede was his efforts to raise concerns and correct the expenses wrongfully attributed to him by Mid-South, which as plead in his Complaint could reasonably lead to violations of the Stark Law, the Anti-Kickback Statute, and the False Claims Act. Mid-South mischaracterizes Dr. Fakorede's allegations as a failure to address the link between the violations of the Stark Law and the Anti-Kickback Statute and the False Claims Act, and then tries to call it a "concession." In reality, Mid-South never raised the issue in its Motion to Dismiss or its Memorandum of Law, and it was not addressed in the District Court's Order.

Significantly, nowhere in Mid-South's Brief does it argue that non-compliance with the Anti-Kickback Statute or Stark Law related to recruiting agreements such as the one at issue in this case could not reasonably lead to a viable FCA claim. In fact, Mid-South concedes that violations of the Stark Law or Anti-Kickback Statute could give rise to false certification liability under the FCA. (Appellee's Brief, Doc. 17, PageID#28, n.2). This is especially true given the United States Supreme Court's recent decision in *Escobar v. United Health Services*, which held that the "implied false certification" theory can be a basis for

FCA liability when a defendant fails to disclose non-compliance with material statutory, regulatory, or contractual requirements. *Escobar*, 579 U.S. _____ (2016).

The cases cited by Mid-South in furtherance of its conflated argument are distinguishable from the facts of this case. For example, Mid-South points to the case of *Farmer v. Eagle Systems*, with the parenthetical "affirming district court's dismissal of § 3730(h) claim under Rule 12(b)(6) because plaintiff failed to allege facts showing he had engaged in 'protected activity' given that the alleged wrongdoing that he reported was not an FCA violation." (Appellee's Brief, Doc. 17, PageID#24) (citing *Farmer v. Eagle Sys. & Serv., Inc.*, No. 15-1124, 2016 WL 3564386, at *2) (4th Cir. July 1, 2016)). The true holding of that case, however, is that the alleged protected activity of reporting one theft of a pair of goggles was merely a "speculative connection" to support the argument that a report of theft might have indirectly prevented future fraudulent deliveries to the government and therefore the eventual prevention of an FCA violation. *Farmer*, 2016 WL 3564386, at *2. The court held that this was too "attenuated" a connection between the alleged protected activity and an FCA violation. *Id.*

Directly on point, however, and in support of Dr. Fakorede's position, is a case cited in his brief, *Tibor v. Michigan Orthopaedic Institute*. In *Tibor*, a surgeon brought a retaliation suit against her former employer alleging that she was terminated after her refusal to sign certain contracts that she believed violated

Stark anti-referral laws. *Tibor*, 72 F. Supp. 3d 750, 754 (E.D. Mich. 2014). The district court held that the allegations in her complaint "sufficiently alleged" that the plaintiff engaged in protected activity under the current version of §3730(h) after the 2009 amendments, which broadened the definition of protected activity. *Id*. at 762. The district court stated: "Here, where Dr. Tibor's complaint deals specifically with violations of the Stark Law that give rise to an FCA action, the complaint constitutes protected activity under the False Claims Act retaliation provision." *Id*.

Mid-South tries to distinguish *Tibor* as "unhelpful" by arguing that the court in *Tibor* declined to address whether plaintiff's alleged conduct constituted protected activity under the "efforts to stop" prong of §3730(h). *Tibor* is, however, very helpful as the court <u>did</u> address whether the allegations were sufficient to <u>plead</u> protected activity. *Id*. Further, Dr. Fakorede's case is not before this Court on a motion for summary judgment, but on a motion to dismiss, and thus the issue is not whether there was protected activity. Rather, the issue is whether Dr. Fakorede sufficiently alleged that he was engaged in protected activity, which is exactly the point made by the court in *Tibor* when addressing arguments similar to those raised by Mid-South. *Id*. at *761 n.4 (stating fact-based arguments that plaintiff's not signing the recruiting agreement could not reasonably constitute an effort to stop a

violation of the FCA were "more appropriately raised at the summary judgment stage of the case").

The *Verble v. Morgan Stanley Smith Barney, LLC* case cited by Mid-South actually supports Dr. Fakorede's position. In *Verble*, the district court stated that to constitute an effort to stop a specific (or potential) violation of the FCA, an employee's conduct must be aimed at stopping specific fraudulent claims on the government. *Verble*, 148 F. Supp. 3d 644, 657 (E.D. Tenn. 2015). In the context of retaliation, however, this specificity relates not to an actual falsely submitted claim ---the proverbial "smoking gun"--- but to a specific type of potential violation. *See id*. In this case, Dr. Fakorede alleged violations of the FCA by Mid-South for submitting false claims tainted by unlawful kickbacks or unlawful self-referral violations of the Stark Law. (Complaint, R.E. 1, PageID#6, para. 28, 30).

The essential error made by the trial court in dismissing this case is not recognizing that "[A]n employee need not complete an investigation into potential fraud or uncover <u>an actual</u> FCA violation' because the FCA's anti-retaliation provision protects employees while they are merely collecting information about potential fraud." *Miller*, 2016 WL 2799688, at *5 (citing *Jones–McNamara*, 630 Fed.Appx. at 399) (other citations omitted) (emphasis added). Dr. Fakorede alleged improper kickbacks, and in fact alleged that over $300,000 in payments falsely

attributed to him had to be repaid by Mid-South, which Dr. Fakorede's complaints uncovered. (Complaint, R.E. 1, PageID#18, para. 96).

Mid-South's argument that Dr. Fakorede did not allege protected activity should be rejected by this Court as the Complaint sufficiently plead protected activity under § 3730(h).

## III.    MID-SOUTH DID NOT STATE FEDERAL RULE OF CIVIL PROCEDURE 9(B) AS A GROUND IN ITS MOTION TO DISMISS.

Dr. Fakorede contends, as discussed at length above, that his Complaint sets forth sufficient allegations to state a retaliation claim for engaging in efforts to stop a potential violation of the FCA due to violations of the Anti-Kickback Statute and Stark Law. However, it is significant to note that Mid-South did not raise or rely on Federal Rule of Civil Procedure 9(b) in its Motion to Dismiss. Federal Rule of Civil Procedure 9(b) states that a party must state with particularity the circumstances constituting fraud. Dr. Fakorede's brief sets forth allegations stating the basis for the false or fraudulent claims under the FCA. However, to the extent that Mid-South makes such an argument for the first time on appeal, this Court should deem it waived for Mid-South's failure to raise Rule 9(b) in its Motion to Dismiss. Furthermore, if Mid-South had raised a Rule 9(b) challenge in the trial court on the issues it raises now for the first time on appeal, Dr. Fakorede could

have filed a motion seeking permission to amend or sought leave to amend in his response.[2]

Dr. Fakorede would respectfully request that should this Court find that there may be potential deficiencies in his Complaint that are identified for the first time on appeal, this Court should remand the action to the District Court for consideration of a motion to amend. Courts have permitted amendments when even timely raised Rule 9(b) challenges have been asserted by defendants in similar cases. For example, in a *qui tam* and retaliatory discharge action, in *U.S. ex rel. Schaengold v. Memorial Health*, No. 4:11-cv-58, 2014 WL 7272598, at *17 (S.D. Ga. Dec. 18, 2014), a plaintiff was permitted to amend after defendants moved to dismiss the complaint on Rule 12(b)(6) and Rule 9(b) for failure to sufficiently plead with particularity his claims arising out of alleged unlawful compensation arrangements for a cause of action under the FCA. The district court noted that district courts should generally honor requests for leave to amend except where a "substantial ground" exists for denial. *Id*.

In that case, the district court found no ground existed for denying the motion to amend, especially given an affidavit filed by the plaintiff detailing certain factual allegations that could be added to support his claim. *Id*. Mid-South's failure to raise a Rule 9(b) particularity argument before the district court unfairly

---

[2] Mid-South is quick to point out in its brief that Dr. Fakorede did not seek to amend his Complaint, while ignoring that it now raises new issues on appeal.

prejudices Dr. Fakorede's ability to remedy the claimed deficiencies in his Complaint. "Dismissal with prejudice on the basis of failure to plead with particularity ordinarily should be done only after the plaintiff has a chance to amend the complaint." *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 913 (E.D. Mich. 2012) (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 342 F.3d 634, 644 (6th Cir. 2003)). Dr. Fakorede should be given the opportunity to amend his Complaint should this Court find that his Complaint failed to state with sufficient particularity any fraud allegations in his Complaint.

## IV.    DR. FAKOREDE'S COMPLAINT OTHERWISE SET FORTH SUFFICIENT ALLEGATIONS TO PLEAD A RETALIATORY DISCHARGE CLAIM UNDER THE FCA.

Finally, Mid-South contends that Dr. Fakorede should have alleged his good faith belief that his employer was committing fraud against the government, specifically that Dr. Fakorede's Complaint needed to allege "the requisite state of mind." Notably, Mid-South cites no authority that supports this contention. Dr. Fakorede does not dispute that there is a reasonable belief standard inherent in FCA retaliation claims, but as stated in the very case to which Mid-South cites for this proposition, the reasonable belief requirement post-2009 amendment is that "plaintiff's activities must reasonably embody 'efforts to stop' FCA violations." *Jones-McNamara*, 630 Fed. Appx. at 399. Dr. Fakorede's Complaint sets forth

allegations stating activities that---given the inferences he is entitled--- set forth his efforts to stop FCA violations. This argument by Mid-South should be rejected.

This Court should also reject Mid-South's argument that it lacked notice of Dr. Fakorede's reasonable efforts to stop FCA violations. As discussed at length above, the Complaint alleged that Mid-South was aware of Dr. Fakorede's efforts to raise concerns about the misattribution of expenses to him by his January 10th email to the District, Mid-South's Practice Manager, and Mid-South's accountant. (Complaint, R.E. 1, PageID#13, para. 67). The Complaint also alleged that Mid-South was aware of this protected activity, because on January 12, 2015, Mickey Hannon, Mid-South's outside accountant responded to <u>defend</u> the OBL depreciation expense, an expense that was later disallowed. (R.E. 1, PageID#13, para. 68; PageID#14-15, para. 74). Dr. Fakorede is also entitled to the reasonable inferences related to allegations that on January 9, 2015, Carla Reeves at the District, sent an email to Charlotte Beard (Mid-South) and Mickey Hannon (Mid-South's outside accountant) that Dr. Fakorede had raised questions about the financial reports submitted, and that the District's Vice-President Deann Montchal informed Dr. Fakorede that she had been "in conversation with everyone." (R.E. 1, PageID#12, para. 66; PageID#15, para. 76).    It is a reasonable inference that "everyone" included persons from Mid-South.

The remaining arguments of Mid-South in its brief, especially its argument that consideration of the underlying agreements illustrates Mid-South's lack of notice, are arguments that ask this Court to weigh the evidence. These arguments are more appropriate in review of a summary judgment motion, not on a motion to dismiss. This Court should give no merit to these arguments.

## V.   CONCLUSION

Plaintiff, Dr. Fakorede, asks this Court to reverse the District Court's dismissal of his Complaint and permit his suit to proceed. Alternatively, Dr. Fakorede requests this Court reverse and remand this action to the district court to address Mid-South's newly raised Federal Rule of Civil Procedure 9(b) challenge to his Complaint by permitting him to file leave to amend.

Respectfully submitted:

s/ Donald Capparella
Donald Capparella, BPR# 011239
Elizabeth Sitgreaves, BPR#27539
Dodson Parker Behm & Capparella, PC
1310 6th Ave North
Nashville, TN 37208
(615) 254-2291
(615) 726-2241 (fax)
Capparella@dodsonparker.com
esitgreaves@dodsonparker.com

17

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,822 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. (32)(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

/s/ Donald Capparella
Donald Capparella

Attorney for Foluso Fakorede
Dated: August 26, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent via the Court's ECF system to the following:

Brian D. Roark
Brittain W. Sexton
Bass Berry & Sims, PLLC
150 Third Ave S, Suite 2800
Nashville, TN 37201-3001

Todd D. Sikory
Sikory Law, PLC
316 South Shannon Street
Jackson, TN 38302-1625

On this the 26th day of August, 2016.

/s/ Donald Capparella
Donald Capparella