<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

File Name:  17a0538n.06

Case No. 16-5722

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 22, 2017
DEBORAH S. HUNT, Clerk

FALUSO FAKOREDE,                                    )
                                                   )
     Plaintiff-Appellant,                          )
                                                   )    ON   APPEAL   FROM   THE
v.                                                 )    UNITED   STATES   DISTRICT
                                                   )    COURT   FOR   THE   WESTERN
MID-SOUTH HEART CENTER, P.C.,                      )    DISTRICT OF TENNESSEE
                                                   )
     Defendant-Appellee.                           )

**O P I N I O N**

**BEFORE:  McKEAGUE, KETHLEDGE, STRANCH, Circuit Judges.**

**McKEAGUE, Circuit Judge.**   Faluso Fakorede brings this claim alleging unlawful retaliation in violation of the False Claims Act (FCA) following his termination from Mid-South Heart Center in February of 2015.  The district court found Fakorede failed to allege that he had engaged in protected activity prior to his termination and thus granted Mid-South's Rule 12(b)(6) motion to dismiss.  We agree and affirm.

**I**

Fakorede was a physician who worked as a cardiologist in Jackson, Tennessee from 2013 to 2015.  He was recruited to work in the Jackson area by the Jackson-Madison County General Hospital District—a Tennessee governmental entity—in order to fill a need for cardiologists in the area.

Case No. 16-5722, *Fakorede v. Mid-South Heart Center*

As a result, Fakorede became an employee of Mid-South, a private corporation in Jackson.  Under a separate recruiting agreement, the Hospital District agreed to establish a support account that ensured Fakorede was paid $500,000, no matter his total patient collections. Essentially, the Hospital District permitted Fakorede to use the support account to draw the difference between his net collections (total collections value minus any expenses attributed to him) and $500,000.  Instead, in accordance with its separate employment agreement, Mid-South simply paid Fakorede $500,000, accounted for his collections, and then directed him to draw on the support account based on those calculations.  Fakorede then assigned the draw to Mid-South. Additionally, Mid-South and Fakorede agreed that, if Fakorede did not stay for the full three-year term outlined in the recruiting agreement, he would owe any draw amount back to the Hospital District.  However, Mid-South agreed to indemnify Fakorede if the Hospital District determined "based on an accounting" that draws from the support fund had been improperly calculated.

Approximately ten months into his first year, Fakorede asked for documentation related to Mid-South's calculations of the draw totals.  Then, approximately fourteen months after starting work at Mid-South—some four months after he first raised concerns about how expenses had been calculated—Fakorede was terminated.  It later came to light that Mid-South had improperly attributed over $200,000 in expenses to Fakorede during his first year.  He now brings this retaliation claim under the FCA, 31 U.S.C. § 3730(h), based on his termination.  The district court granted Mid-South's Rule 12(b)(6) motion to dismiss for failure to state a claim and dismissed the complaint.

Case No. 16-5722, *Fakorede v. Mid-South Heart Center*

## II

The district court's grant of a motion to dismiss pursuant to Rule 12(b)(6) is reviewed de novo. *Goad v. Mitchell*, 297 F.3d 497, 500 (6th Cir. 2002). We may affirm a decision of the district court if correct for any reason, including one not considered below. *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 330 F.3d 747, 750 (6th Cir. 2003).

Rule 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). We construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion, the complaint must contain "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (citation omitted).

This case arises under the FCA's anti-retaliation provision, 31 U.S.C. § 3730(h). The provision provides relief for an employee who was:

> . . . discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h). To succeed on a claim that § 3730(h) was violated, a plaintiff must show that (1) she engaged in a protected activity, (2) the employer knew she engaged in the protected activity, and (3) the employer discharged or otherwise discriminated against the employee as a result of the protected activity. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003); *Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 398 (6th Cir. 2015).

Case No. 16-5722, *Fakorede v. Mid-South Heart Center*

Dismissal of a retaliation claim is proper when a plaintiff fails to adequately plead any one of these three elements. *See Yuhasz*, 341 F.3d at 566.

Our analysis begins and ends with the first element—whether Fakorede's complaint adequately alleges that he engaged in protected activity prior to his termination. Relevant protected activity would be an "effort[] to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h). Such an effort must stem from a reasonable belief that fraud is being committed against the federal government. *Jones-McNamara*, 630 F. App'x at 400. In other words, to plead protected activity, Fakorede must allege conduct directed at stopping what he reasonably believed to be fraud committed against the *federal* government. *See Miller v. Abbott Labs.*, 648 F. App'x 555, 560 (6th Cir. 2016) (quoting *Jones-McNamara*, 630 F. App'x at 399). In this, Fakorede's pleadings fall short.

Fakorede's relevant pre-termination conduct was related to the calculation of costs attributed to him by Mid-South for which it was effectively reimbursed by the Hospital District. Fakorede requested information related to those expenses, including a year-end financial report and underlying documents and data. After receiving the financial report, he "expressed concerns" about some of the expenses attributed to him. Eventually, he requested an independent review of the report and was told there would be a line-item audit. Although Fakorede was "reassured by the line-item audit," he nonetheless "reminded" the Hospital District that "only expenses permitted by federal law for the [Hospital District] to cover" were properly attributable to Fakorede under his recruiting agreement. He was terminated approximately one week later. To tie his conduct to federal fraud, as is necessary for his claim to survive, Fakorede asserts that, if Mid-South improperly calculated expenses to overdraw from the support account, then any Medicare claims "tainted" by violations of the Stark Law and Anti-Kickback Statute

Case No. 16-5722, *Fakorede v. Mid-South Heart Center*

were submitted to Medicare in violation of the FCA.  This legal conclusion itself is not unfounded, as the connection between the Anti-Kickback Statute, the Stark Law, and the FCA is statutory.  *See* 42 U.S.C. § 1395nn(a)(1)(B); 42 U.S.C. § 1320a-7b(g).  Nonetheless, one cannot reasonably infer from Fakorede's complaint that his efforts were directed toward preventing what he reasonably believed was ongoing federal fraud.

In essence, Fakorede requested information related to expenses attributed to him by his private employer, expressed concerns as to whether those expenses were correctly calculated and reimbursed by a Tennessee entity, and reminded others that an audit should check for compliance with federal law.  This fails to allege conduct reasonably related to fraud against the federal government.  *See McKenzie v. BellSouth Telecommunications*, *Inc.*, 219 F.3d 508, 516–17 (6th Cir. 2000) (protected activity does not include "merely urging compliance with regulations") (citing *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 744 (D.C. Cir. 1998); *see also Iqbal*, 556 U.S. at 679 (we do not accept legal conclusions as true absent supporting factual allegations).  Accordingly, Fakorede has not pled that he engaged in protected activity.

However, Fakorede argues that his complaint should survive because it is reasonable to infer that he was concerned about the violations of federal law because he knew that Mid-South, like all major healthcare providers, submitted claims to Medicare for Fakorede's services.  But this inference is not supported by any factual allegations in the complaint.  At best, the complaint—in its "governing law" section—shows that the FCA may be implicated by violations of the Stark Law.  While this may be true, there are no underlying allegations to support the conclusion that Fakorede himself, at any time prior to his termination, understood the connection between the FCA and other federal law, that his activity was motivated by this connection, or that even a single Medicare claim was submitted by Mid-South during that time.  We are not to

Case No. 16-5722, *Fakorede v. Mid-South Heart Center*

assume Fakorede's conduct was directed at preventing possibly "tainted" claims from being submitted to the *federal* government when nothing in the pleadings shows he understood, was motivated by, or even aware of that possibility.  *See Iqbal*, 556 U.S. at 679.

Still, it may be fair to infer that Fakorede's alleged conduct arose out of a reasonable belief that his employer was committing fraud against the Hospital District.  Even so, it is unreasonable to infer that Fakorede believed any fraud committed against the Hospital District—a state entity—constituted fraud against the federal government.  Indeed, the alleged fraud committed against the Hospital District was precisely what Fakorede's "concerns" seemed to target: that Mid-South miscalculated expenses in order to induce the Hospital District to overpay.  However, the alleged fraud against the *federal* government—involving unspecified Medicare claims "tainted" by violations of federal law—was indirect, complex, and nowhere facially contemplated in Fakorede's conduct as described in his complaint.  Absent any supporting factual allegations, it is unreasonable to infer that Fakorede's conduct was directed toward preventing federal fraud.  Thus, Fakorede has failed to allege he was engaged in protected activity under the FCA prior to his termination.  He therefore has no retaliation claim under 31 U.S.C. § 3730(h).

### III

For the foregoing reasons, we affirm the district court.

Case No. 16-5722, *Fakorede v. Mid-South Heart Center*

**JANE B. STRANCH, Circuit Judge, dissenting**.  At issue in this case is whether Dr. Fakorede stated a claim against his employer for retaliation in violation of the False Claims Act (FCA).  To make this determination, we accept as true the allegations of the complaint and evaluate their viability under the provisions of the FCA in force at the time of the filing.  Dr. Fakorede filed his complaint after the FCA was amended in 2009 to expand the protections—and therefore claims—available to *qui tam* relators.  Because I believe that Dr. Fakorede's complaint states a claim under the amended FCA, I respectfully dissent.

The FCA is the key tool employed by the government to require that fraudulently claimed funds be returned to the United States and its citizens.  Many FCA cases rely on whistleblowers within companies to find and report such fraud, collect evidence, and sometimes litigate the claims.  But whistleblowers face serious risks, as employers are unlikely to shrug off leaks of incriminating information from within their own ranks.  The FCA has long protected whistleblowers by authorizing a cause of action for employees who have been retaliated against for involvement with an FCA claim.  Traditionally, civil relief for retaliatory actions could be sought by those "in furtherance of an action under [the FCA]." 31 U.S.C. § 3730(h)(1).  Because judicial narrowing of the scope of the FCA led to a decline in such cases and a significant drop in monies recovered, Congress sought to make the FCA more effective by expanding protection for whistleblowers.  S. Rep. 111-10, 4.  Under the FCA as amended in 2009, the ability to seek relief was made available not just to those acting "in furtherance of an action" under the FCA but also to those who undertook "other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1).  The amended FCA and subsequent cases show that Dr. Fakorede states a claim within the category of those protected by the FCA's retaliation provision.

- 7 -

Case No. 16-5722, *Fakorede v. Mid-South Heart Center*

This claim arose in the context of Dr. Fakorede's concern about expenses that were attributed to his practice and thereby retained by his employer, Mid-South. In December 2014, he began requesting financial information from the Hospital that was late and, upon its receipt, raised issues with multiple executives and requested an audit. On January 30, 2015, he was told that over $200,000 of expenses claimed by Mid-South were disallowed. In response, Dr. Fakorede made multiple requests in early February for information about the audit he had requested, emphasizing that his contract contains express language on expenses permitted by federal law. The Hospital told him on February 9 that a line-item audit was in progress. Mid-South terminated Dr. Fakorede on February 10. He was right to be concerned—the audit Dr. Fakorede requested ultimately found that Mid-South claimed over $314,000 in expenses related to his medical practice that were improper.

Dr. Fakorede had correctly warned that the improper expenses could constitute an "illegal kickback scheme." Healthcare providers who participate in Medicare and Medicaid—which includes all major providers—certify that they are complying with the Stark Law and Anti-Kickback Statute when they submit claims for payment. *See* CMS-1500, https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/CMS1500.pdf (last visited Sept. 18, 2017) ("In submitting this claim for payment from federal funds, I certify that: . . . this claim . . . complies with all applicable Medicare and/or Medicaid laws, regulations and program instructions for payment including but not limited to the Federal anti-kickback statute and Physician Self-Referral law (commonly known as Stark law) . . . ."). "Falsely certifying compliance with the Stark or Anti-Kickback Acts in connection with a claim submitted to a federally funded insurance program is actionable under the FCA." *United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009) (internal citations omitted).

Case No. 16-5722, *Fakorede v. Mid-South Heart Center*

The majority opinion finds that Dr. Fakorede did not adequately plead that he reasonably believed he was engaged in conduct to prevent fraud against the federal government.  Maj. Op. 4.  However, Dr. Fakorede pled that on multiple occasions, he pointed out his concerns over "an illegal kickback scheme."  He specifically mentioned a "violation of Stark Laws" in an email to executives in the immediate aftermath of his termination.  Even the recruiting agreement that was the basis for the claimed expenses stated that Mid-South would include "only those expenses which are legally permitted by federal laws governing recruiting agreements."

Dr. Fakorede's statements and actions occurred within the context of the healthcare industry, where sophisticated parties such as those involved here are well aware that claims submitted to Medicare are paired with certifications of compliance with applicable laws.  In the complaint, Dr. Fakorede pointed out that Stark Law and Anti-Kickback Statute violations can "taint" claims that are made for services covered by Medicare or Medicaid, federally funded programs.  Even if the factual basis for some of the steps could have been laid out in more detail, an FCA *retaliation* claim does not require pleading with particularity.  *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416 & n.1 (2005).  The only question before us is whether Dr. Fakorede's complaint states a claim.  Drawing on "judicial experience and common sense" to undertake the "context-specific task" of Rule 12(b)(6), *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), I believe that Dr. Fakorede adequately pled a reasonable belief that fraud was being committed against the federal government and that Mid-South retaliated against him for acting on that belief.  I therefore respectfully dissent.